IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JERRY BRENISER and GALE THURBER, <br><br> Plaintiffs, <br><br> v. <br><br> WESTERN RECREATIONAL VEHICLES, INC., a foreign corporation, <br><br> Defendant. | No. CV-07-1418-HU <br><br> OPINION & ORDER |

Justin M. Baxter
BAXTER & BAXTER LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225

    Attorney for Plaintiffs

HUBEL, Magistrate Judge:

    Plaintiffs Jerry Breniser and Gale Thurber bring this action against defendant Western Recreational Vehicles, Inc., regarding an allegedly defective fifth wheel trailer plaintiffs purchased in August 2005. Plaintiffs bring a single breach of warranty claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 - 2312.

    Both parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure

1 - OPINION & ORDER

73 and 28 U.S.C. § 636(c). Plaintiffs move for summary judgment. I deny the motion on the current record, but give plaintiffs leave to file a supplemental motion.

## BACKGROUND

Plaintiffs filed this action in state court and defendant removed it to this Court. At the time, defendant was represented by counsel. Later, I granted a motion by then-defense counsel to withdraw, and gave defendant time to obtain new counsel. Defendant has not done so. Thus, defendant is no longer represented by counsel in this action. As a result, it may not appear in the action. Local Rule 83.9(b) ("Unless otherwise specifically provided by law or Court order, a corporation may appear or act only through an attorney.").

In support of their motion for summary judgment, plaintiffs submitted a Concise Statement of Facts (CSF). Defendant has not responded to the motion. All facts asserted by plaintiffs in their CSF are deemed admitted. Local Rule 56.1(f) (material facts set forth in the concise statement of the moving party will be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party).

The following facts are asserted by plaintiffs in their CSF and supported by declarations and exhibits. On or about August 26, 2005, plaintiffs purchased a 2006 Alpenlite Portofino Fifth Wheel from Highway Trailer Sales in Salem, Oregon. Pltfs' CSF at ¶ 1; Breniser Declr. at ¶ 2. The Alpenlite was manufactured by Western Recreational Vehicles, Inc. (WRV). Id.

At the time, a representative of Highway Trailer Sales advised plaintiffs that the Alpenlite was covered by WRV's warranty and

2 - OPINION & ORDER

that if the Alpenlite needed any repairs, plaintiffs should bring it to Highway Trailer Sales for service under the WRV warranty. Id.

After the purchase, plaintiffs discovered numerous defects and damage to the Alpenlite. Pltfs' CSF at ¶ 2; Breniser Declr. at ¶ 3. The defects included (1) a leaking roof and leaking slider seals; (2) a leaking refrigerator; (3) faulty shower, moulding, and vents; (4) defective microwave, furnace, and electronics; (5) damaged or defective slider; (6) de-lamination at trailer-side fifth wheel support; and (7) defective wheels. Id. Additionally, as a result of one or more of these defects, the Alpenlite has sustained water damage, mold, and damage to wiring and circuitry. Id. The defects are continuing, and plaintiffs continue to experience leaking and mold growth in the Alpenlite. Id.

Initially, plaintiffs returned to Highway Trailer Sales for service under the WRV warranty. Pltfs' CSF at ¶ 3; Breniser Declr. at ¶ 4. Because Highway Trailer Sales was unable to repair or remedy all of the defects, plaintiffs contacted WRV directly and were told to bring the Alpenlite to the WRV factory in Yakima, Washington. Id. Plaintiffs did so, but WRV was unable and unwilling to repair or remedy all of the defects and damage. Id.

Plaintiffs contend that as a result of WRV's failure to honor the warranty on the Alpenlite, they have suffered damages totaling $88,623.68. Pltfs' CSF at ¶ 5; Breniser Declr. at ¶ 6. In his declaration, Breniser details the damages as follows: (1) $15,000 for trade in; (2) $1,350 for down payment; (3) $1,280.18 for monthly payments; (4) $69,976.82 for payoff balance; (5) $269.48 for tires; (6) $618.20 for storage; and (7) $129 for a

3 - OPINION & ORDER

dehumidifier. Breniser Declr. at ¶ 6.

On December 15, 2006, Western Recreational Vehicles, Inc., a Delaware corporation, executed an Asset Purchase Agreement with Western Recreational Vehicles, Inc., a Washington corporation, in which the Delaware corporation purchased the Washington corporation. Pltfs' CSF at ¶ 6; Baxter Declr. at ¶ 2; Exh. 1 to Baxter Declr.

In 2007, by and through their attorney, plaintiffs again requested that WRV repurchase the Alpenlite and refund plaintiffs' out-of-pocket losses. Ptlfs' CSF at ¶ 4; Breniser Declr. at ¶ 5. The parties were unable to negotiate a successful resolution to the disagreement. Pltfs' CSF at ¶ 7; Baxter Declr. at ¶ 3.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th

4 - OPINION & ORDER

Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

## DISCUSSION

I. Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act (MMWA) "creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty." Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912, 917 (9th Cir. 2005); 15 U.S.C. § 2310(d)(1)(B) ("[A] consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty . . . may bring suit for damages and other legal and equitable relief . . . in an appropriate district court of the

5 - OPINION & ORDER

United States[.]").

The MMWA distinguishes between full and limited warranties, although it applies to both and each is considered a written warranty. Milicevic, 402 F.3d at 919 (citing sections 2303(a)(1)-(2), 2301(6), and 2310(d)(1)).

Under the MMWA, a written warranty is (1) a writing made by the supplier of a product relating to the nature of the material or workmanship of the product, and which promises that the product is defect free or will meet a certain level of performance for a given period of time, or (2) a writing in which the supplier agrees to refund, repair, replace, or take other remedial action in the event that the product fails to meet its specifications. 15 U.S.C. § 2301(6).

A "full warranty" under the MMWA is a written warranty meeting the federal minimum standards set forth in section 2304 of the statute, and which is conspicuously designated a "full (statement of duration) warranty." 15 U.S.C. § 2303(a)(1). A "limited warranty" under the MMWA is a written warranty that does not meet the federal minimum warranty standards set forth in section 2304 of the statute, and which is conspicuously designated a "limited warranty." 15 U.S.C. § 2303(b)(1).

Although the MMWA sets forth remedies in 15 U.S.C. § 2304, they are applicable only to "full" warranties. MacKenzie v. Chrysler Corp., 607 F.2d 1162, 1166 (5th Cir. 1979); see also Gusse v. Damon Corp., 470 F. Supp. 2d 1110, 1116 (C.D. Cal. 2007) ("federal remedies described in 15 U.S.C. § 2304(a) only apply to full warranties."). As noted in MacKenzie, the MMWA is "virtually silent as to the amount and type of damages which may be awarded

6 - OPINION & ORDER

for breach of an express limited warranty." MacKenzie, 607 F.2d at 1166. Thus, courts look to state substantive law to determine the appropriate remedies. Gusse, 470 F. Supp. 2d at 1117; see also Walsh v. Ford Motor Co., 807 F.2d 1000, 1016 (D.C. Cir. 1986) (unless expressly modified by Magnuson-Moss, state warranty law applies to all breach of warranty claims brought under the MMWA).

II.  The Warranty

In an exhibit appended to a supplemental declaration, Breniser submits a copy of the applicable warranty. It is almost four pages long. Exh. 1 to Breniser Supp'l Declr. It provides, in pertinent part:

# WESTERN RECREATIONAL VEHICLES, INC.
*Fifth Wheel Trailer, Travel Trailer and Truck Camper*

**MANUFACTURER'S 1 YEAR LIMITED WARRANTY**

(NONCOMMERCIAL USE)

**1.  General Terms of One (1) Year Limited Warranty**

Western Recreational Vehicles, Inc. ("WRV") hereby warrants to the non-commercial consumer purchaser, for a period of one (1) year from the date of purchase . . . that the subject Unit shall be free of *substantial defects* in material and workmanship attributable to WRV, *provided however*, that WRV also provides a 5 year pro-rata limited warranty on defects in the structural integrity of the unit, as specifically set forth in Paragraph 2, below. *Components which are purchased by WRV for inclusion within the Unit normally carry the component manufacturer's own warranty; therefore, such items are not warranted by WRV in this Limited Warranty or any other express or implied warranty. It should be noted that some component parts might have a warranty period longer or shorter than one(1) year. WRV is no way is responsible for any warranty either written or expressed on these component parts*. **This Limited Warranty refers only to materials and component parts manufactured and/or adapted for uses by WRV and WRV's workmanship related to the design or construction of the unit, including installation of component parts into the unit.**

A *substantial defect*, assuming it is

7 - OPINION & ORDER

otherwise covered under this Limited Warranty, occurs only when a part or system of the Unit fails to perform substantially within the design or manufacturing specifications for that part or system and which substantially limits the usage of the Unit.

In the event it is determined that there exists a *substantial defect* covered by this Limited Warranty, WRV agrees that it will repair the defect [and] pay reasonable parts and labor charges related to such repair. WRV reserves the right to deny payment or reimbursement therefore if it is not related to a *substantial defect*. WRV reserves the right to make, or permit the use of, new and/or remanufactured parts in making such repairs.

. . .

**4. Warranty Recovery Limitations and Disclaimers**

WRV shall **not be liable** for any consequential or incidental damages resulting from any defect, including *substantial defects*, in the Unit. WRV makes no warranty of any kind beyond that contained in this Limited Warranty. To the extent that implied warranties of merchantability and/or fitness for a particular purpose are found to exist by operation of law or facts, such are limited in duration to the warranty period of one (1) year from purchase by the original consumer purchaser. . .

. . .

**6. Items and Events Specifically Not Covered**

The items and events set forth below, plus other items and events not listed but which are equivalent of the items and events listed, are specifically not covered by this Limited Warranty:

a) Items purchased, manufactured an/or [sic] installed other than at WRV's facility;

b) Batteries, tires, axles and wheels;

c) All domestic-type appliances, including, but not limited to, refrigerator, stove, oven, microwave, ice maker, water heater, furnace, television, stereo, radio, compact disc player, video cassette player/recorder, washer and dryer;

. . .

8 - OPINION & ORDER

Id.

Although plaintiffs describe this warranty as a "full warranty," it is a limited warranty under the MMWA. 15 U.S.C. § 2303(a)(2) (written warranty not meeting federal minimum standards of section 2304 must be conspicuously designated "limited warranty"). Here, the warranty is clearly labeled "limited," in more than one place and initially appearing in bold and in larger type than the remaining provisions. The warranty does not meet the federal minimum standards for full warranties because, *inter alia*, it limits the duration of any implied warranty and it does not provide for the election of refund or replacement as a remedy for a defect or malfunction after attempts to remedy. See 15 U.S.C. § 2304(a)(2) (under federal minimum standards for full warranties, warrantor may not impose any limitation on the duration of any implied warranty on the product); 15 U.S.C. § 2304(a)(4) (under federal minimum standards for full warranties, warrantor must offer replacement or refund).

III. Dispute Resolution

Although the MMWA expressly provides a private right of action to file suit in a United States District Court, it also expresses a Congressional policy of encouraging warrantors to establish dispute resolution procedures to more expeditiously settle consumer disputes. 15 U.S.C. § 2310(a)(1). The statute further provides that if a warrantor establishes an informal dispute settlement procedure which meets requirements established by the Federal Trade Commission (FTC), the consumer may not commence a civil action unless the consumer initially proceeds through the informal procedure. 15 U.S.C. § 2310(a)(3)(I).

9 - OPINION & ORDER

The warranty issued by WRV contains a dispute resolution provision requiring that disputes be resolved through binding arbitration. Exh. 1 to Breniser Supp'l Declr. at ¶ 9. There is no evidence that plaintiffs submitted their dispute to arbitration.

In this case, however, the failure to use the dispute resolution procedure set forth in WRV's warranty does not preclude this action. Although the Ninth Circuit has not discussed the issue, other courts have held that the dispute resolution procedure offered by a warrantor under the MMWA may not require binding arbitration.

In Browne v. Kline Tysons Imports, Inc., 190 F. Supp. 2d 827 (E.D. Va. 2002), the court explained that "[a] clear reading of the statute evinces Congress' intent to encourage informal dispute settlement mechanisms, yet not deprive any party of their right to have their written warranty dispute adjudicated in a judicial forum." Id. at 831. The court held that an informal dispute settlement procedure used to resolve written warranty disputes under the MMWA "must be a non-binding mechanism, which serves as a pre-requisite, and not a bar, to relief in the court." Id. (further citing the FTC regulations and noting that the agency's interpretation supports a conclusion that written warranty claims under the MMVA are not subject to binding arbitration).

Several other courts have reached the same conclusion. E.g., Rickard v. Teynor's Homes, Inc., 279 F. Supp. 2d 910, 921 (N.D. Ohio 2003); Yeomans v. Homes of Legend, Inc., No. 00-D-824-N, 2001 WL 237313, at *6-8 (M.D. Ala. Mar. 5, 2001) (finding that Congress intended to preclude binding arbitration of express and written warranty claims under the MMWA); Pitchford v. Oakwood Mobile Homes,

10 - OPINION & ORDER

Inc., 124 F. Supp. 2d 958, 962-65 (W.D. Va. 2000) (relying largely on FTC's regulations finding binding arbitration to be impermissible and on the MMWA's grant of access to a judicial forum to find that the MMWA precludes binding arbitration of disputes over written warranties); Raesly v. Grand Housing, Inc., 105 F. Supp. 2d 562, 573 (S.D. Miss. 2000) (finding that MMWA precludes binding arbitration of written warranty claims); Wilson v. Waverlee Homes, Inc., 954 F. Supp. 1530, 1532 (M.D. Ala. 1997) (MMWA precludes binding arbitration of MMWA claims, in part because it provides access to a judicial forum and because the FTC regulations have so interpreted it); but see Walton v. Rose Mobile Homes LLC, 298 F.3d 470, 479 (5th Cir. 2002) (MMWA does not preclude binding arbitration of claims); In re American Homestar of Lancaster, Inc., 50 S.W.3d 480, 490 (Tex. 2001) (MMWA's text, legislative history, and purpose do not preclude binding arbitration); Results Oriented, Inc. v. Crawford, 245 Ga. App. 432, 538 S.E.2d 73, 79-81 (2000) (MMWA does not preclude arbitration of express and implied warranty claims, unless arbitration clause is unconscionable), aff'd, 273 Ga. 884, 548 S.E.2d 342 (2000).

I follow the reasoning of the majority of the courts to have considered this issue and conclude that the MMWA precludes binding arbitration and thus the provision in the WRV limited warranty is unenforceable.

IV. Asset Purchase Agreement

The summary judgment record filed by plaintiffs includes a copy of the Asset Purchase Agreement between buyer Western Recreational Vehicles, Inc., a Delaware corporation ("WRV-Delaware"), and seller Western Recreational Vehicles, Inc., a

11 - OPINION & ORDER

Washington corporation ("WRV-Washington"), dated December 15, 2006. Exh. 1 to Baxter Declr. WRV-Delaware is the defendant in this case, but WRV-Washington was apparently the manufacturer of the Alpenlite.

Plaintiffs assert that under the Asset Purchase Agreement, WRV-Delaware purchased all of WRV-Washington's assets and assumed WRV-Washington's liabilities. In support, plaintiffs cite to paragraphs 1.1 and 1.2 of the Asset Purchase Agreement.

These paragraphs, however, refer to other portions of the Asset Purchase Agreement which plaintiffs fail to note or discuss. In particular, paragraph 1.2, addressing the assumption of liabilities, provides:

> <u>Assumption of Liabilities</u>. On the terms and subject to the conditions set forth in this Agreement, Buyer agrees to assume, pay, defend, discharge, perform and otherwise become responsible for all Assumed Liabilities at the Closing. Notwithstanding anything to the contrary contained in this Agreement, Buyer will not assume, be liable for or have any responsibility with respect to any Excluded Liability.

Exh. 1 to Baxter Declr. at ¶ 1.2.

Thus, to determine whether WRV-Delaware has assumed any liabilities related to limited warranties, one must refer to the definitions of "Assumed Liabilities" and "Excluded Liability." Assumed Liabilities are defined to include,

> subject to clause (xv) of the definition of "Excluded Liabilities," Liabilities arising from or relating to any product defects to, or returns of, products or goods sold by the Company on or prior to the Closing Date, or the failure of the Company or any such products or goods to be in compliance with all applicable Laws or for any violation of Law prior to the Closing Date[.]"

<u>Id.</u> at Art. VII. Here, WRV-Washington sold the product to plaintiffs before the closing date.

12 - OPINION & ORDER

Clause (xv) of the definition of "Excluded Liabilities," provides that "any and all Liabilities relating to or arising from any claim, action, suit, charge, complaint, material grievance, hearing, investigation or other proceeding (including any arbitration proceedings) that is not set forth on Schedule 4.10 and is threatened or pending against the Shareholders or the Company as of the Closing Date" are excluded. Id.

The record reveals that before the December 15, 2006 closing, plaintiffs had communicated their displeasure with the Alpenlite several times. On November 4, 2005, plaintiffs wrote to Bruce Lawrence and Doug Alfred to report several problems with the Alpenlite and to ask for an explanation of the processes and steps required to either exchange it or get their money back. Exh. 1 to Breniser Declr.[1] In an email written sometime after December 27, 2005, plaintiffs told Gary Ford of WRV Customer Service, that on December 27, 2005, they had contacted Oregon Attorney General Hardy Myers for assistance in the matter. Id.

In an undated, and unaddressed letter by Breniser, Breniser describes meeting with Jeff Ropper and Mr. Glazier (presumably Mike Glazier, Vice President for Customer Service), when he took the Alpenlite to "your facility" for work. Id. He further notes that at the time, he told Glazier that if he (Breniser) was not happy after the completion of the work, he would "follow other avenues to secure the return of my investment." Id. In a March 1, 2006 email to "rdoyle," Breniser repeats that he told Glazier that if Breniser

---

[1] In future submissions, plaintiffs are ordered to paginate any exhibits.

13 - OPINION & ORDER

was not satisfied with the repairs, he would follow other avenues to secure the return of his investment. Id. He also stated that he would be contacting a lawyer for help. Id. He requests a total refund. Id.

Included in the documents Breniser describes as containing a "true copy of the warranty history for the Alpenlite, as well as correspondence between me, Highway Trailer Sales, and WRV[,]" Breniser Declr. at ¶ 4, is a copy of a letter from "Shield Warranties," to Breniser regarding a particular contract and claim, and noting Breniser's request for reimbursement on the claim. Id. The request was denied because the components listed were not covered. Id. Although this does not appear to be a claim under WRV's Limited Warranty, it is unclear what this is.

On October 19, 2006, plaintiffs emailed their current counsel regarding problems with the Alpenlite's wheels, as well as a complaint about the furnace. Id. On December 29, 2006, plaintiffs again emailed their current counsel with reports of problems with the bedroom slide and a leak in the living room slide. Id.

On the present record, plaintiffs fail to establish that the Limited Warranty applicable to their Alpenlite was a liability assumed by WRV-Delaware, the defendant in this action because plaintiffs fail to establish that none of the documents in Exhibit 1 to Breniser's Declaration and noted here are a "claim, action, suit, charge, complaint, material grievance, hearing, investigation or other proceeding." Additionally, the copy of the Asset and Purchase Agreement plaintiffs submitted in support of their motion fails to include any of the referenced schedules, including Schedule 4.10. Thus, even if plaintiffs had made a claim, action,

14 - OPINION & ORDER

suit, etc., it is impossible to discern from this record whether such a claim, action, suit, etc., is one listed on Schedule 4.10 and thus, an assumed, rather than excluded, liability.

On this record, I cannot conclude as a matter of law, that the Limited Warranty on plaintiff's Alpenlite was an assumed liability under this Asset Purchase Agreement. Thus, summary judgment must be denied.

Finally, as noted above, the record does not support a conclusion that the warranty at issue here is a "full warranty," under the MMWA. Instead, it is a limited warranty. As a result, plaintiffs' remedies are defined by state law. Gusse, 470 F. Supp. 2d at 1117 (courts look to state substantive law to determine appropriate remedies for breach of written limited warranty under MMWA); 15 U.S.C. 2311(b)(1) (nothing in the Act "shall invalidate or restrict any right or remedy of any consumer under State law[.]").

Plaintiffs fail to provide the Court with any citation to or discussion of the applicable Oregon law regarding remedies for breach of warranty. My own research suggests that Oregon's "Lemon Law," Oregon Revised Statute § (O.R.S.) 649A.400 - 646A.418, may not apply here because the Alpenlite is not a passenger motor vehicle as defined in O.R.S. 801.360. The Lemon Law applies to "consumers." O.R.S. 646A.402 (remedies under the law available to a consumer). "Consumer" is defined as the purchaser of a new motor vehicle normally used for personal, family, or household purposes. O.R.S. 646A.400(1)(a). "Motor vehicle" is defined as "a passenger motor vehicle as defined in ORS 801.360." O.R.S. 801.360 defines "motor vehicle" as "a vehicle that is self-propelled or designed

15 - OPINION & ORDER

for self-propulsion." Because the Alpenlite is a fifth-wheel trailer, it is not self-propelled or designed for self-propulsion. Thus, the state law remedies provided in Oregon's Lemon Law are likely unavailable to plaintiffs for their MMWA limited warranty claim.

While Oregon's Uniform Commercial Code governing sales, including sales of consumer goods, found in O.R.S. Chapter 72, appears applicable, plaintiffs again fail to address this in their memorandum. In any supplemental motion, plaintiffs must address what remedies are available under state law and why they believe the damages they seek are recoverable under that state law. They also must support the amounts delineated in Breniser's declaration with some type of documentary and explanatory evidence. The present record fails to explain exactly what these damages are and why or how they are recoverable.

## CONCLUSION

Plaintiffs' motion for summary judgment (#25) is denied. Plaintiffs are given leave to file a supplemental motion for summary judgment within two weeks of the date of this Opinion & Order.

IT IS SO ORDERED.

Dated this  12th  day of  December , 2008.


                                         /s/ Dennis James Hubel
                                        Dennis James Hubel
                                        United States Magistrate Judge

16 - OPINION & ORDER